COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

Walter H. MENDEL and Lillian Mendel, Respondents.

Walter H. MENDEL and Lillian Mendel, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

Nos. 9904, 9905.

United States Court of Appeals
Fourth Circuit.

Argued June 4, 1965.

Decided Oct. 8, 1965.

Before SOBELOFF and BELL, Circuit Judges, and WINTER, District Judge.

WINTER, District Judge.

A petition and cross petition for review of a decision of the Tax Court, Walter H. Mendel, 41 T.C. 32 (1963), raises two income tax questions: (1) whether taxpayer may deduct from income in 1957 moving expenses incurred by him in moving from Newark, New Jersey, to Richmond, Virginia, during that year, and (2) whether taxpayer may claim a dependency exemption for his son Ralph for the year 1957, and his son Stephen for the year 1958.[1]

*Moving Expense Deduction*

Taxpayer is a physician, specializing in radiology. For the tax years in question he was employed by the United States Veterans Administration as Chief of Radiology Service. In June, 1957, he was transferred from Newark, New Jersey, where he had been employed for approximately four years, to McGuire Veterans Administration Hospital, Richmond, Virginia. The transfer was initiated by a request of the Director of McGuire Veterans Administration Hospital, was made in the interest of the government, and was not requested by the taxpayer. In making the move, taxpayer incurred total expenses of $558.99, conceded to be reasonable in amount, for packing and transporting furniture, storage and handling of furniture in transit, packing materials and insurance and hotels and meals in transit. Under the standardized government travel regulations then in effect, and pursuant to orders of the Veterans Administration, taxpayer was reimbursed in the amount of $316.00. Taxpayer deducted the difference from his joint income tax return for 1957, but the Commissioner disallowed the unreimbursed amount spent in moving. With five dissents, the Tax Court reversed the Commissioner's adverse decision. Since we conclude that

Fred R. Becker, Atty., Dept. of Justice (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson and David O. Walter, Attys., Dept. of Justice, on brief), for Commissioner of Internal Revenue.

Walter H. Mendel, pro se.

———◆———

1. Lillian Mendel is Walter H. Mendel's second wife. She participated in the proceedings only because she filed a joint income tax return with her husband for the two years in question.

the Tax Court was in error, we reverse its decision on this issue.

The Tax Court's decision on this point stemmed from Rev.Ruling 54–429, 1954–2 Cum.Bull. 53, which concluded that employer reimbursement of an existing employee's moving expenses for a move made at the instance of the employer does not represent compensation, includible as gross income in the taxpayer's return, if the total amount of reimbursement or allowance is spent for moving. The revenue ruling had been followed in John E. Cavanagh, 36 T.C. 300 (1961). The Court was of the view that the rationale of Cavanagh was that reasonable expenses in moving are not personal expenses (otherwise reimbursement would constitute taxable income) so that, necessarily, they must be ordinary and necessary business expenses.[2] As ordinary and necessary business expenses, the Court reasoned, taxpayer is entitled to deduct from gross income the unreimbursed portion thereof.[3]

The opinion of the majority is founded upon an erroneous basis. The approach we must follow in a resolution of the issue is one exemplified by United States v. Woodall, 255 F.2d 370 (10 Cir. 1958), namely, that any economic or financial benefit conferred on an employee as compensation is gross income, and that there may be deducted from gross income only those expenditures expressly made deductible by statute.[4] Ordinarily, reimbursement for moving expense to an existing employee would constitute gross income under the comprehensive definition in § 61(a) of the Revenue Code of 1954 that, " * * * gross income means all income from whatever source derived, including (but not limited to) * * * Compensation for services, including fees, commissions, and similar items * * *." Rev. Ruling 54–429, supra, sought to alleviate the rigors of the application of the statutory definition of gross income to reimbursement for moving expenses to an existing employee. An examination of the ruling discloses that its rationale is that reimbursement for moving expenses does not constitute gross income, *not*, as the Tax Court determined, that expenses of relocation are *per se* deductions for the employee.[5] John E. Cavanagh, 36

2. Recently, in England v. United States, 345 F.2d 414, 417 (7 Cir. 1965), the Cavanagh case was termed "wrongly decided" in excluding reimbursements for post-arrival food and lodging expenses from gross income.

3. In arriving at this result, the Tax Court departed from the contrary view expressed, *inter alia*, in Russell Porter Dolan, P–H Tax Ct.Mem. ¶ 48,018 (1948), and Fulton Freeman, P–H Tax Ct.Mem. ¶ 52,084 (1952).

4. United States v. Woodall, 255 F.2d 370, 373 (10 Cir. 1958), " * * * it has * * * been long recognized that deductions are matters of legislative grace, *allowable only when there is a clear provision for them*, and do not turn upon equitable considerations. * * * What should be allowed as an expense deduction is a matter of policy for Congress, not the Courts." (emphasis supplied)

5. Rev.Ruling 54–429:
   "Accordingly, it is concluded that (1) amounts received by an employee from his employer representing allowances or reimbursements for moving himself, his immediate family, household goods and personal effects, in case of a transfer in the interest of his employer, from one official station to another for permanent duty, do not represent compensation within the meaning of section 22(a) of the Code, and are not includible in the gross income of the employee if the total amount of the reimbursement or allowance is expended for such purposes; (2) any excess of the allowances or reimbursements over the actual expenses incurred is includible in the employee's gross income; and (3) any moving expenses paid or incurred by the employee in excess of the allowances or reimbursements are not deductible for Federal income tax purposes, since they represent personal, living or family expenses within the meaning of section 24(a) of the Code. In any case in which the transfer is made primarily for the benefit of the employee, any allowance or reimbursement received by the employee is includible in his gross income.
   "Amounts received as allowances or reimbursements for meals and lodging of the employee and his family while awaiting permanent quarters at the new post of duty are includible in gross income of the employee."

T.C. 300 (1961), was decided solely on the basis that reimbursement for moving expenses was a permissible exclusion from gross income. In reaching this result, the Tax Court stated, at p. 302, that the portion of the Rev. Ruling with which we are concerned in the case at bar "is sound and has persuasive effect \* \* \*." The validity of a portion of the ruling was also accepted in England v. United States, 345 F.2d 414 (7 Cir. 1965).

■ We are not referred to, nor have we found, any case which holds that unreimbursed moving expenses constitute any permissible deduction under the Revenue Code of 1954, or its predecessor statutes, where, as here, there is no finding that such moving expense is an ordinary and necessary business expense of the taxpayer. Cf. England v. United States, supra; Cockrell v. Commissioner, 321 F.2d 504 (8 Cir. 1963); Light v. Commissioner, 310 F.2d 716 (5 Cir. 1962); Andrews v. Commissioner, 179 F.2d 502 (4 Cir. 1950); York v. Commissioner, 82 U.S.App.D.C. 63, 160 F.2d 385 (1947). Nor are we aware of any section of the Code making unreimbursed moving expense deductible where such expense is not an ordinary and necessary business expense of the taxpayer. The conclusion is inescapable that such expenditures were "personal, living or family expenses" of the taxpayer, expressly made non-deductible by § 262 of the Code; we hold, therefore, that, for the year in question, the unreimbursed moving expense was not a permitted deduction.[6]

### Dependency Exemptions

Taxpayer was married to his former wife, Gisela, in 1943, and twin sons were born of this marriage on December 20, 1947. This marriage was terminated by divorce in 1954.

The decree of dissolution incorporated a property settlement and support agreement, which required taxpayer to pay $22.50 per week for the support of each of his sons, as well as medical and dental bills. Taxpayer was also required to carry three life insurance policies on his life, for the benefit of his sons. On March 7, 1957, the Circuit Court of Cook County, Illinois, required taxpayer to increase the weekly payments, commencing February 14, 1957, to $27.50 per week for each of the boys, and for the year 1957 to pay a total of $150.00 for a summer day camp for his sons. In 1957 taxpayer paid $1,455.00 in support payments for each of his sons and, in addition, paid $170.11 as medical expenses. He also paid $538.80 in life insurance premiums.

In 1958 taxpayer paid $1,430.00 in support payments for each of his sons, and a total of $88.92 for medical expenses. His life insurance premiums were, again, $538.80.

Since 1954 the sons have lived with their mother.

Taxpayer claimed the dependent exemption for both sons for 1957 and 1958. The Commissioner disallowed the dependency exemption for one son for each of these years, and his disallowance was affirmed by the Tax Court.

In support of his claim for the dependency exemption, taxpayer testified that he had made a diligent effort to obtain information as to the total amount expended for the support of his sons for the years 1957, 1958 and other years, but that he had not been able to get this information from his estranged wife. He testified that he knew of no serious illnesses that either of the boys had had the years 1957 or 1958, that they attended public schools, that they were dressed modestly when he saw them, and that he did not believe that their support would be in excess of the amount he paid. Taxpayer was unable to show the amount of

6. The Revenue Act of 1964 adds § 217 to the Code, 26 U.S.C.A. § 217, the effect of which is to make unreimbursed moving expenses deductible, but this change is effective only as to expenses incurred after December 31, 1963, Pub.L. 88–272, § 213 (d).

his former wife's income in 1957 and 1958.

Because taxpayer could not prove the total cost of the support of Ralph in 1957, and Stephen in 1958, and thus to prove that the amount expended by him in their support was more than one-half of their total support, the Tax Court sustained the Commissioner's disallowance of the exemption. Again, we think that the Tax Court was in error, and we reverse its judgment in this regard.

Section 151(e) (1) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 151(e) (1), provides an exemption of $600.00 for each dependent. Insofar as pertinent to this case, § 151(e) (1) of the Code, 26 U.S.C.A. § 151(e) (1), defines "dependent" to mean a son "over half of whose support, for the calendar year * * * was received from the taxpayer * * *." The Code does not require a showing of the precise amount of entire support which a dependent received from all sources, although establishment of that amount by the taxpayer is in most cases a crucial fact. Treasury Regulations on Income Tax (1954 Code) § 1.152–1(a) (2) (i); Kennedy v. C. I. R., 339 F.2d 335 (7 Cir. 1964); Fearing v. C. I. R., 315 F.2d 495 (8 Cir. 1963); Tressler v. Commissioner, 206 F.2d 538 (4 Cir. 1953).

■ Here, although the precise amount of total support from all sources was not shown, we think that the taxpayer met his burden of showing that he contributed over one-half of the support for his sons. Taxpayer showed that for the years in question, the sons were ten and eleven years old, respectively. He showed that they were dressed modestly, that they attended public schools, and that they had no extra-ordinary medical expenses. On personal observation, he expressed the view that the total cost of their support did not exceed his contributions. For 1957, he showed that he contributed a total of $3,080.11 for their support, exclusive of the purchase of life insurance on his life for their benefit, and for 1958, the like figure was $2,948.92. We think the case

at bar is like Theodore Milgram, 31 T.C. 1256 (1959); and E. R. Cobb, Sr., 28 T.C. 595 (1957), where eligibility to claim the dependency exemption was upheld and distinguishable from Bernard C. Rivers, 33 T.C. 935 (1960), relied on by the Tax Court to support a contrary result.

The Tax Court will enter a decision in accordance with the views expressed herein.

Reversed and remanded.