EDWARD N. WILSON AND LOUISE K. WILSON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5387–65. Filed January 24, 1968.

Edward N. Wilson, pro se.
*Wayne I. Chertow*, for the respondent.

OPINION

Petitioners expended the sum of $375.57 to move their household goods and personal effects from Evansville, Ind., to Lexington, Ky. Respondent's position is that this expense was not a deductible business

item under section 162, I.R.C. 1954; [2] rather, he urges, it constituted a nondeductible personal expense under section 262. Section 217, enacted by the 1964 Revenue Act, now specifically allows the deduction in situations such as this, but such statute does not apply to the tax year here involved.

Petitioner's argument is classically straightforward. Initially he points out that if his moving expenses had been reimbursed, the reimbursement would have been excluded from his gross income if the move were made in the interest of his employer. See Rev. Rul. 54–429, 1954–2 C.B. 53. He then argues that his payment of moving expenses under the circumstances here present was an ordinary and necessary business expense.

In *Walter H. Mendel*, 41 T.C. 32 (1963), our position with respect to petitioner's argument was stated as follows:

We believe that a corollary to the soundness and persuasive effectiveness of Rev. Rul. 54–429 which we accepted in *John E. Cavanagh, supra* [36 T.C. 300] is an inherent assumption in that ruling that reasonable amounts expended by a permanent employee in moving his family and personal effects in a transfer from one permanent post of duty to another are not personal expenses. If such amounts constituted personal expenses, amounts received in reimbursement therefor would be includable in the income of the taxpayer. [citing cases] * * * Ordinary and necessary business expenses are deductible by an employee who itemizes his deductions * * * The clear inference from our holding in *John E. Cavanagh, supra,* is that the entire amount of the expenses paid by an employee in moving from one permanent duty station to another is deductible to the extent that the amount expended is ordinary and necessary to accomplish the move * * * [41 T.C. at 38.]

However, the Court of Appeals for the Fourth Circuit reversed our decision in *Mendel*, declaring among other things that deductions are a matter of legislative grace and not of logic or equity. *Commissioner v. Mendel*, 351 F. 2d 580 (C.A. 4, 1965). Respondent so instructs us now and we are in agreement with that general principle. While the Fourth Circuit in *Mendel* held that we wrongly determined that expenses of relocation in the interest of an employer were per se deductions for an employee, it was stressed that there was no finding that the moving expense was an ordinary and necessary business expense of the taxpayer. The court went on to observe that absent such a finding no section of the Code permitted the deduction. Here, on the record presented, we have made such a finding because we are convinced that the unreimbursed moving expenses of petitioners were ordinary and necessary expenses of Edward's employment with the Kentucky Geological Survey, incurred in his business of being an employee of that agency. Accepting the rationale of *Commissioner v. Mendel, supra,* we conclude here that the deduction should be allowed under section 162.

---

[2] All statutory references shall be to the Internal Revenue Code of 1954 unless otherwise noted.

We think it naive to assume and ukaselike to assert that the concept of the "ordinary and necessary" business expenses under section 162 and its predecessors has not been an expansive or, at least, a flexible one. A myriad of different types of business costs are regularly deducted under section 162 without any further specific statutory authorization. Furthermore, many common deductions which now bask in the specific authority of a general congressional enactment or executive regulation were originally allowed, if at all, only after having been hammered out under the broad authority of section 162 or its predecessors. The areas of entertainment, travel, and educational expenses come readily to mind.

It is unnecessary to belabor further the point which we think should now be clear. The concept of the "ordinary and necessary" business expense cannot be static or immutable but must be flexible. As the nature, form, and scope of American business activity changes it is inevitable that notions of what constitutes "ordinary and necessary" business expenses will likewise change. An expense item which is "ordinary and necessary" today might represent an eccentric luxury at some future point in time, or what might be luxurious and a frippery now may soon be absolutely ordinary and necessary to run a business tomorrow.

In *Mendel*, the thrust of our opinion was that if reasonable reimbursed expenses were not personal so as to constitute gross income, similar unreimbursed expenses were also not personal, but deductible business expenses. Inherent in the case was the recognition that American business and those who engage in it have become increasingly mobile in the geographical sense so that amounts spent in moving from one permanent post to another may well be business expenses and not personal ones. The reversal of that case by the Fourth Circuit does not dictate a contrary result here under the facts disclosed by this record, particularly in light of our finding that petitioner had to accept the transfer against his will to insure his future employment with the Survey and that the expenses paid for moving were ordinary and necessary business expenses of the taxpayer. Surely, in these days of the organization man, if a move is ordered by the employer for the employer's convenience and the employee's future earnings would be jeopardized by refusing to accept transfer, nonreimbursed moving expenses are proximately related to the business of the taxpayer-employee so that they constitute a business expense to him.

We see a clear analogy, though imperfect, between the allowance of this moving expense and the allowance of "away-from-home" travel and lodging expenses in the years before there was specific statutory provision or administrative guidelines for this deduction. Cf. *Jay N. Darling*, 4 B.T.A. 499 (1926). Although not as foreseeable

and regular as the peregrinations of peripatetic salesmen, intercity and interstate moves at the order and to serve the interest of an impersonal employer are now common and indispensable adjuncts to the wage-earning careers of many taxpayers. Almost invariably the employer today reimburses the employee for the moving expense incurred, in which case the employee is not out of pocket nor does he realize gross income therefrom. Rev. Rul. 54–429, *supra.* In the infrequent case in which the employer fails to reimburse the employee, the latter should be permitted to deduct such expenses as ordinary and necessary to his business where the facts warrant a finding to that effect.

We think it appropriate to note the choice of words in the committee reports which accompanied section 217, adopted by the 1964 Revenue Act, through the Congress. Both the House and Senate committee reports directed their remarks to the fact that then-existing "*tax treatment*" did not permit the deduction. There is no implication or suggestion in the reports that Congress thought the existing law might not be broad enough at its roots to encompass allowance of the deduction presently sought. We think congressional dissatisfaction was not with existing statutory permission but rather was principally directed at the deductions and exclusions which were not then being "*allowed*" either by judicial or administrative determinations. See H. Rept. No. 749, 88th Cong., 2d Sess., 1964–1 C.B. (Part 2) 183; S. Rept. No. 830, 88th Cong., 2d Sess., 1964–1 C.B. (Part 2) 575.

We conclude and hold that petitioner has established his right to the disallowed deduction under section 162 and that the rationale of *Commissioner* v. *Mendel, supra,* does not dictate a contrary result. Wilson's move to Lexington was made at the order of his employer and to serve the convenience of the Kentucky Geological Survey. He desired to remain in Evansville, and, as reflected by our findings, was compelled to give up several potentially rewarding occupational endeavors there upon his departure. Further, petitioner was a coal geologist and contrary to his preference was forced to devote his professional talents to the geology of oil and gas. In short, we conclude that the move to Lexington was made at the employer's order against petitioner's will to serve the employer's convenience, and the expense was incurred to preserve petitioner's job and future as a Survey employee.[3]

There are certain objective facts surrounding the move which smack of a promotion, a move entered into primarily to benefit the

---

[3] "If the employee is forced to change the location of his home for the convenience of his employer as an alternative to being dismissed, the situation may lose the aspect of personal expense and come under the familiar rule exemplified by such situation as the cost of education to retain an existing job as contrasted with obtaining a new one,[3] or the cost of room or meals where an employer and not the employee insists upon the employee's location." Opper. *J.,* concurring in *Willis B. Ferebee,* 39 T.C. 801, 804 (1963).

414

petitioner. However, petitioner, whose candor and demeanor on the witness stand were impressive, has convinced us that the move to Lexington was made against his wishes and over his protest. He was forced to accept the transfer to preserve his business of being a Survey employee. We conclude that here it was the employer whose purposes, interests, and convenience were served by the transfer and not petitioner; the moving expense was incurred for petitioner's business purposes and reasons and not for personal ones.

We hold that petitioner is entitled to deduct $375.57 as the reasonable cost of moving his household goods and effects from Evansville to Lexington. Under the factual situation before us, the deduction is permitted under section 162 as an ordinary and necessary expense incurred by petitioner in carrying on his trade or business, the expense was directly and proximately related to his employment with the Kentucky Geological Survey and paid to preserve and maintain that employment.

As to the second issue re expenses incurred in the upkeep and sale of petitioner's residence at Evansville, petitioner argues that the "total debits to third parties," which he expended either as direct selling costs or as maintenance costs to promote the sale, are deductible by him as an ordinary and necessary business expense. We cannot agree. See *Victoria Paper Mills Co.*, 32 B.T.A. 666, 667 (1935), affirmed per curiam 83 F. 2d 1022 (1936), and other cases cited therein. Petitioner was not in the real estate business and the expenses incurred in selling his residence are not deductible under section 162. The rule is thoroughly engrained that commissions and similar charges must be treated as capital expenditures which reduce the selling price when gain or loss is computed on the transaction. Also, we conclude that the mowing, garbage removal, and painting costs are not business expenses and so cannot be deducted as such. The property was not rented or otherwise income producing in any manner.

Petitioner alternatively contends that all of these expenses should be allowed in computing "the loss" that resulted from the sale of his old residence. We conclude that the latter described expenses were not so closely related to the sale that they should be viewed as selling costs which could be applied to reduce the selling price in computing gain or loss. In any event, petitioner cannot be permitted to treat any loss which he may have sustained in the transaction as a capital loss under section 1211(b).

Even though petitioner's residence was a capital asset subject to the special tax on gain realized therefrom, he may not treat any loss sustained in the transaction as a capital loss. Loss from the sale of a personal residence does not constitute a capital loss. *Richard P. Koehn*, 16 T.C. 1378 (1951). A capital loss deduction is allowed to an individual only if the loss was incurred in a trade or business or in a transaction

entered into for profit. *Eli Winkler*, 2 T.C. 735, 738 (1943) (interpreting section 117 of the 1939 Code upon which present section 1211 is based). See also section 1.262–1(b)(4) of the present regulations.

Petitioner urges that the loss from the purchase and sale of his Evansville home was incurred in his trade or business or arose from a transaction entered into for profit because he sold it as a result of his transfer. We perceive no business relationship between ownership of petitioner's residence and his profession. Further we cannot accept petitioner's urging that the Evansville house was purchased with the profit motive intended by section 165(c)(2) allowing certain losses by individuals to be deducted. The *Winkler* case dictates that present paragraphs (1) and (2) of section 165(c) be read into section 1211(b). On brief petitioner virtually admits that he had only the same expectation of property value appreciation which imbues all homeowners.

In his brief petitioner also appears to argue that even if the house was not originally purchased with a profit or business motive, it was converted to business property upon his move to Lexington. We are unable to accept this view of the facts. The Evansville residence was never rented. It was held at all times after petitioner was transferred to Lexington for sale. See *Allen L. Grammer*, 12 T.C. 34 (1949).

More important, petitioner has failed to prove his basis at the time of conversion, even if there was one. There is insufficient evidence before us to prove the fact of the loss or its measure. All we have is petitioner's unsubstantiated oral testimony that in 1952 petitioners paid $12,500 for their residence.

In accord with our remarks above, petitioner may not deduct any of his "debits to third parties" beyond the $62.98 allowed as an itemized deduction by respondent for property taxes. These debits were not ordinary and necessary *business* expenses, and petitioner has failed to show either that he sustained a capital loss or that any loss sustained would be of the deductible variety, i.e., related to a business or profit-making purpose so as to be deductible under section 165(c)(1) or (2).

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

TIETJENS, *J.*, dissenting: The majority opinion takes a tender approach. I think the callousness of experience and the state of the law call for a different conclusion. *Commissioner* v. *Mendel*, 351 F. 2d 580, reversing 41 T.C. 32 and cases cited therein.

---

ATKINS, *J.*, dissenting: In my opinion the moving expenses are not deductible. *Commissioner* v. *Mendel*, 351 F. 2d 580.

TIETJENS, *J.*, agrees with this dissent.

SCOTT, J., dissenting: While the result reached by the majority in this case is equitable, I do not agree with the conclusion in the opinion that this case is distinguishable from *Commissioner* v. *Mendel*, 351 F. 2d 580 (C.A. 4, 1965), reversing 41 T.C. 32 (1963). The Court of Appeals in its opinion in that case stated that it had not been referred to nor found "any case which holds that unreimbursed moving expenses constitute any permissible deduction under the Revenue Code of 1954, or its predecessor statutes, where, as here, there is no finding that such moving expense is an ordinary and necessary business expense of the taxpayer," and further stated that it was not aware of "any section of the Code making unreimbursed moving expense deductible where such expense is not an ordinary and necessary business expense of the taxpayer." These statements were made following a statement that the taxpayer's transfer "was initiated by a request of the Director of McGuire Veterans Administration Hospital, was made in the interest of the government, and was not requested by the taxpayer." As I interpret the opinion of the Court of Appeals, it holds that the fact that a taxpayer makes a move in the interest of his employer and not at his own request does not cause the expense of the move to be an ordinary and necessary business expense.

The fact that petitioner in the instant case was informed that unless he accepted the transfer to Lexington he would "jeopardize his future with the Kentucky Geological Survey" does not distinguish this case from *Commissioner* v. *Mendel, supra.* In *Walter H. Mendel*, 41 T.C. 32, 37 (1963), this Court called attention to the taxpayer's having said in his opening statement at the trial that "it was necessary for him to accept the transfer in order to continue his employment with the Veterans Administration," and to the respondent's position that "even though petitioner's retention of his employment with the Veterans Administration depended on his accepting the transfer * * * nevertheless the expenses of moving * * * were personal expenditures." The Court of Appeals, however, in reversing our holding, did not comment specifically on the necessity of the taxpayer's accepting the transfer to retain his employment. Had the Court intended its comments with respect to there being "no finding that such moving expense is an ordinary and necessary business expense of the taxpayer" to indicate that if the evidence showed that the taxpayer's employment would be jeopardized if he refused the transfer, certainly some comment would have been made as to the taxpayer's failure of proof in this respect.

One of the cases relied on by respondent in support of his position in the *Mendel* case was *H. Willis Nichols, Jr.*, 13 T.C. 916 (1949), which involved the disallowance of a claimed deduction for moving

expenses by an army officer ordered to a change of station during time of war. The *Nichols* case is as near as any factual situation could come to an "involuntary" move. Normally in our society an employee does not make an "involuntary" move. He either refuses to move and accepts the consequences or he moves in the interest of his employer, generally with the hope that by complying with his employer's interest he is also advancing his own interests. The fact that a taxpayer "protests" making the move, as petitioner did here, merely shows that his future advancement with his employer is more important to him personally than remaining in his old location. The move may be no more necessary to his employment advancement than such a move is to an employee who moves in the interest of his employer without protest or even happily. In the instant case there is no finding that petitioner was told or believed he would lose his position with his employer if he did not move, but even if such a finding were made, it would not in my opinion be the determining factor as to the deductibility of his moving expenses. It would show only that the move was made in preference to seeking a new employer. This petitioner was a professional man and moved because his employer requested him to move under such circumstances that he felt his best interests for continued success with that employer would be served by moving and he could expect no future advancement if he did not. He was evidently correct, at least in regard to his professional advancement being served by complying with his employer's wishes, since he not only received a promotion upon making the move but subsequently was again promoted. However, the personal desire or lack of desire of a taxpayer to make a move in the interest of his employer does not, to me, seem material to determining whether the cost of moving his furniture and household effects is a business expense. It might be that where an employer required the employee to move his household effects, furniture, and family, such fact would be material, but there is no indication here of such a requirement. Petitioner could have sold his furniture as he did his house and rented furnished living quarters at the new location or bought new furniture. He could have maintained his personal home at his old location. See *Commissioner* v. *Flowers*, 326 U.S. 465 (1946). In fact he did not move his personal home until 5 months after his transfer. The choice of the petitioner to move his furniture and household effects was personal under the holding of a long line of cases prior to our decision in *Mendel* and in my opinion it was on the basis of this long line of cases that the Court of Appeals reversed our holding in *Mendel*.

I am in sympathy with the result reached by the majority opinion and agree with petitioner's position that the Commissioner's Rev. Rul. 54-429, 1954-2 C.B. 53, is inequitable in that it permits an existing em-

ployee who is reimbursed for his moving expenses to exclude the amount of the reimbursement from his income even though courts have consistently held such reimbursements to constitute taxable income (see *United States* v. *Woodall*, 255 F. 2d 370 (C.A. 10, 1958)) but does not permit those existing employees who are required to move in the interest of their employers without reimbursement of moving expenses to deduct the cost of their moving expenses. Discrimination in the treatment of different taxpayers whose basic circumstances are the same is unappealing even if the discrimination is, as stated in *Commissioner* v. *Mendel, supra*, "to alleviate the rigors of the statutory definition of gross income." For years ending after December 31, 1963, when moving expenses are paid after that date, the discrimination between the taxpayer who receives reimbursement and the one who does not has been removed by statute. Sec. 217, I.R.C. 1954. In H. Rept. No. 749, 88th Cong., 2d Sess., to accompany H.R. 8363 which included the provision which became section 217, I.R.C. 1954, 1964–1 C.B. (Part 2) 183, recognition of the existing inequity appears from the following statement:

(b) *General reasons for provisions.*—Your committee believes that the existing tax treatment of moving expenses needs modification because the present treatment discriminates against both new employees and employees who are not reimbursed for their moving expenses by their employers. Your committee sees no reason why new employees should include in their income amounts representing moving expenses which, if received by an existing employee who is moved by his employer from one location to another, would be excludable from income. Neither does your committee see any reason for discriminating against those employees who are not reimbursed for their moving expenses, but who incur such expenses in seeking job opportunities. Your committee believes that it is important to remove deterrents to the mobility of labor. Anything which can be done in this respect should aid in reducing local structural unemployment.

In my opinion an even more inequitable situation for years to which section 217, I.R.C. 1954, is inapplicable will result if the criterion for determining the deductibility by an employee of unreimbursed moving expenses is to be, as suggested by the majority opinion in this case, the degree of pressure brought by the employer upon the employee to accept the transfer. In my opinion, a more desirable result would be to allow a deduction for reasonable moving expenses by any employee when the move is made in the interest of his employer. However, if this view is not to be adopted, such expenses should not be deductible by any employee who is not required by his employer to move his furniture and family, and reimbursements made of such expenses should be includable in an employee's income.

TIETJENS, *J.*, agrees with this dissent.